IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**J. MICHAEL BROWN; YOUNG AMERICANS FOR**
**LIBERTY AT JONES COUNTY JUNIOR COLLEGE**                             **PLAINTIFFS**

**V.**                                                        Case No.:  2:19-cv-127-KS-MTP

**JONES COUNTY JUNIOR COLLEGE; BOARD OF TRUSTEES**
**OF JONES COUNTY JUNIOR COLLEGE; JESSE SMITH, in**
**his individual and official capacity; MARK EASLEY, in**
**his individual and official capacities; GWEN MAGEE,**
**In her individual and official capacities; STAN**
**LIVINGSTON, in his individual and official capacities**              **DEFENDANTS**

## DEFENDANTS' REBUTTAL BRIEF IN SUPPORT OF MOTION TO DISMISS

Plaintiffs have failed to establish they have standing to support certain of their claims, that they have alleged facts sufficient to overcome the individual defendants' qualified immunity, or that they have stated a claim for damages. These claims should be dismissed.

**1.      *Plaintiffs lack standing to challenge the "public profanity" provision.***

Plaintiffs have failed to allege the Student Handbook's restriction on "public profanity" was applied to them or has chilled their speech in any way. They assert only that their Complaint alleges "at least one JCJC staff member viewed that profanity as a basis to prohibit the activity." Pl.'s Brf., at 13. In fact, the Complaint alleges only that Luke Hammonds, a non-party College employee, "stated loudly that the free speech ball had 'profanity all over it'" while Easley spoke with Livingston." Compl., at ¶ 56. This lone allegation, even if proven, is not proof that the public profanity provision was applied to Plaintiffs, that they suffered any injury, or that their speech was chilled. *See generally Glass v. Paxton*, 900 F.3d 233, 238 (5th Cir. 2018). Plaintiffs have not alleged Hammonds had any role in requiring them to schedule or curtail a

campus activity or that any person with such a role agreed with, repeated, or paid his comment any heed. They have not alleged they intend or wish to use profanity on the College's campus. At best, they have alleged Hammonds stood on a sidewalk near Brown's location and made a verbal observation about the ball. Any belief their speech has been chilled is "imaginary or wholly speculative" and insufficient to confer Article III standing. *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018).[1]

### 2. *Plaintiffs should not be allowed to assert third party standing.*

Plaintiffs concede they would "normally" lack standing to pursue their claims for declaratory and injunctive relief. Instead, they seek to assert third party standing to maintain facial challenges to the College's policies on behalf of other current College students. Pl.'s Brf., at 14-15. Plaintiffs are correct that "courts may permit third-party standing when a plaintiff demonstrates that a provision that *validly* restricts its own speech is overbroad." Nat'l *Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011) (emphasis added). However, Plaintiffs have not alleged the College's policies were "validly" applied to their conduct.

An overbreadth challenge is not appropriate where a plaintiff cannot demonstrate the challenged regulation "will have any different impact on any third parties' interests in free speech than it has on" the plaintiff's interests. *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (holding overbreadth challenge inappropriate where plaintiffs "failed to

---

[1] Nor should Plaintiffs be allowed to assert third party standing to facially attack the policy on behalf of other College students, as they cannot do so without alleging the provision was actually applied to its conduct. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011) (also holding that, if plaintiffs are "limited by one provision of an ordinance and make a facial challenge due to the overbreadth of a different provision, there is no constitutional standing, i.e., there is no 'case or controversy,' as to the separate provision.") (internal citation omitted).

identify any significant difference between their claim that the ordinance is invalid on overbreadth grounds and their claim that it is unconstitutional when applied to their political signs"); *see also U.S. v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992) (holding "[a]n overbreadth challenge is not appropriate if the first amendment rights asserted by a party attacking a statute are essentially coterminous with the expressive rights of third parties"). This is so because, "where the parties challenging the statute are those who desire to engage in protected speech that the overbroad statute purports to punish[,] … [t]here is then no want of a proper party to challenge the statute, no concern that the attack on the statute will be unduly delayed or protected speech discouraged." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 504 (1985).

Plaintiffs cannot maintain third party standing under the overbreadth doctrine because they have alleged the College's policies are unconstitutional as applied to their own conduct and that they desire to engage in speech they claim to be unconstitutionally limited by the College's policies. Compl., at ¶¶ 118, 135-41.

A plaintiff seeking to assert third party standing must also show the overbreadth of the challenged restriction is both real and substantial, judged in relation to its legitimate sweep. *Star Satellite, Inc. v. Biloxi*, 779 F.2d 1074, 1078 (5th Cir. 1986) (*citing Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). This is particularly true where "where conduct and not merely speech is involved…." *Broadrick*, 413 U.S. at 615. Moreover, third party standing is not available when the challenged regulation is subject to a narrowing construction, *Star Satellite*, 779 F.2d at 1078, and absent a limiting construction from a state court, federal courts should "presume any narrowing construction or practice to which the law is 'fairly susceptible.'" *City of Lakewood v. Plain Dealer*

*Publ'g Co.*, 486 U.S. 750, 770 n.11 (1988) (*citing Erznoznik v. City of Jacksonville*, 422 U.S. 205, 45 L. Ed. 2d 125, 95 S. Ct. 2268 (1975)). Plaintiffs' briefing does not address these issues.

Plaintiffs concede they lack standing to seek injunctive and declaratory relief for themselves, and their allegations defeat their invocation of third party standing. Plaintiffs' claims for injunctive and declaratory relief must be dismissed.

3. ***YAL lacks organizational standing.***

Plaintiffs have failed to establish Young Americans for Liberty at Jones County Junior College has standing to maintain this suit. YAL has not alleged it has "at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012). There is no allegation YAL has any members at the college, has a presence on the College's campus, or has sought to be recognized as a student organization at the College. Plaintiffs' allegations fail to even establish YAL is an actual organization, and they offer no explanation for the fact that YAL appears to be unrecognized by the national Young Americans for Liberty organization as they alleged in the complaint. Def.'s Brf., at 7 [Doc. 15]. Even if YAL has sufficiently alleged an injury in fact (which Defendants deny for the reasons set forth in their primary brief), it has not established standing to champion the rights of other, hypothetical College students.

4. ***Plaintiffs have failed to state a claim of supervisory liability sufficient to overcome Defendant Smith and Magee's invocation of qualified immunity.***

Plaintiffs have failed to demonstrate their allegations are sufficient to support their individual capacity claims for supervisory liability against Defendants Smith and Magee. First, Plaintiffs do not allege either Smith or Magee was personally involved in the two on-campus

4

events described in their Complaint, or that they were even aware of those events. Moreover, a § 1983 claim for failure to train or supervise still requires evidence of "overt personal participation" in the training or supervision of the subordinates who participated in the offensive acts. *Blank v. Eavenson*, 530 Fed. App'x 364, 370 (5th Cir. 2013). Here, Plaintiffs have failed to allege Smith or Magee *did* or *failed to do* any particular thing, either in relation to the events described in the Complaint or to the purported failure to train or supervise their subordinates. Without any such allegations, Plaintiffs' allegation Smith and Magee "failed to supervised their subordinates," Compl., at ¶ 138 [Doc. 1] is an "unadorned, the-defendant-unlawfully-harmed-me accusation" insufficient to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' second argument is that Smith and Magee can be individually liable because they "implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Pl.'s Brf., at 18. (*citing Miley v. Jones Cty. Jail*, No. 2:05cv2072-KS-MTP, 2007 U.S. Dist. LEXIS 54078, at *16-17 (S.D. Miss. July 25, 2007)) (internal quotations omitted). It is a precondition of *any* theory of supervisory liability, though, that the supervisor's acts caused a constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (*citing Barksdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983). Plaintiffs assert Smith and Magee may be individually liable because they are alleged to have "maintained and implemented" the challenged policies. Pl.'s Brf., at 20 [Doc. 19]. However, the only concrete facts Plaintiff alleges to support this theory of liability involve the alleged acts of *other people*. *Id*. Plaintiffs do claim Defendant "Livingston expressly identified Magee as the administrator responsible for implementing the prior approval policies and procedures challenged in this action." Pl.'s Brf., at 20. However, as Defendants previously noted, the Complaint actually alleges

Livingston told Brown and his associates Magee was responsible for scheduling student activities, a process in which Plaintiffs do not allege they participated.

Qualified immunity protects government officials from liability "when they reasonably could have believed that their conduct was not barred by law, and immunity is not denied unless existing precedent places the constitutional question beyond debate." *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017) (*quoting Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)) (emphasis in original). "When there is no controlling authority specifically prohibiting a defendant's conduct, the law is not clearly established for purposes of defeating qualified immunity." *Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir. 1994). Plaintiffs have not cited any controlling authority that would have put Smith and Magee on notice that a college administrator can be personally liable under § 1983 because the administrator exercised *general* supervision over employees who allegedly violated his First Amendment rights in enforcing a school policy.

Moreover, Plaintiffs' brief cites no authority holding any specific acts of which Smith and Magee are actually accused were unconstitutional or that the underlying policies were unconstitutional under clearly established law. Plaintiffs claim they "have alleged that the policies maintained and implemented by Smith and Magee are unconstitutional, and, therefore, 'a repudiation of constitutional rights.'" Pl.'s Brf., at 20. However, their brief does not discuss the legal authority they contend renders the policies unconstitutional, and they cite no case that makes personal supervisory liability concurrent with the facial constitutionality of a challenged regulation.

6

The facts of the Ninth Circuit case cited in Plaintiff's brief, the only cited case dealing with college policies, do not support their claims against Smith or Magee. In that case, the plaintiff student organization, which published and distributed an independent student newspaper, alleged certain university employees were involved in a decision to confiscate and dispose of its outdoor news bins and enforcement of a policy limiting news bins to certain areas on campus. *OSU Student All. v. Ray*, 699 F.3d 1053, 1057-58 (9th Cir. 2012). The Ninth Circuit reversed the district court's dismissal of individual capacity claims against three of the four individual defendants because those defendants "participated in the decision to deny them permission to place bins outside of the designated areas after the confiscation." *Id*. at 158. The plaintiff alleged the defendant facilities services director had directly rejected its request to place the news bins, and the defendant vice president and vice provost "knew that their subordinate … was applying the previously unannounced and unenforced policy against the Liberty, but not against any of the other off-campus newspaper, and they did nothing to stop him." *Id*. at 1069-71. Plaintiffs do not make the same allegations of knowledge and involvement against Smith and Magee. Also, even if this case did support Plaintiffs' theory, it does not represent the type of "controlling authority [] or a robust consensus of persuasive authority" sufficient to overcome these Defendants' qualified immunity. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013).

Plaintiffs have failed to allege any acts taken by Smith or Magee that would support a claim for supervisory liability, and they have pointed to no clearly established law that would have placed them on notice their conduct was unlawful. Smith and Magee are entitled to qualified immunity, and Plaintiffs' individual capacity claims against them should be dismissed.

5. ***Defendants Easley and Livingston are entitled to qualified immunity on Plaintiffs' as-applied challenge.***

Plaintiffs cite no legal authority in support of their argument Defendants Easley and Livingston violated their First Amendment rights in implementing the College's policies. Pl.'s Brf., at 21-24. Rather, they merely state their conclusion that the College's policies are unconstitutional and that Easley violated their rights because he implemented them. These conclusory arguments are insufficient to defeat these defendants' qualified immunity, and Plaintiffs' as-applied claims against him should be dismissed. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741, (2011) (requiring "existing precedent" placing the "statutory or constitutional question beyond debate"); Kovacic v. Villarreal, 628 F.3d 209, 211 (5th Cir. 2010) (holding "plaintiff has the burden to establish that the alleged conduct violates clearly established law"); *Singleton v. Darby*, 609 Fed. App'x 190, 196 (5th Cir. 2015) (holding "the plaintiff must identify case law" clearly establishing defendants' actions violate clearly established law).

6. ***Defendant Livingston is entitled to qualified immunity from the First Amendment retaliation claim.***

Plaintiffs primarily argue they have stated a First Amendment retaliation claim against Defendant Livingston because they allege their speech was chilled after he threatened to arrest Brown's associates. Plaintiffs cite several cases holding that a plaintiff can demonstrate his speech was chilled when he was threatened with arrests. Just one of those cases, though, deals with a situation in which a plaintiff alleges his speech was chilled because of actions directed at another person. In that case, the plaintiff sued several police officers for excessive force after he was arrested for armed robbery. At the end of his criminal trial, he dispatched a process server to serve one of the defendants (who had since left the police force) while he was at the courthouse

8

to testify in the criminal matter. *Mills v. City of Bogalusa*, 112 F. Supp. 3d 512, 514 (E.D. La. 2015). When the process server delivered the summons, another defendant standing nearby allegedly yelled at the process server and threw the summons and complaint at him. *Id*. at 514-15. The plaintiff further alleged that two defendants subsequently provided false statements to local police and causing the process server to be arrested for obstruction of justice, intimidation of a witness, and battery of a police officer. The process server was taken to jail for several hours, and the plaintiff alleged the defendant officers came to the jail and harassed him while he was detained. *Id*. at 515. The district court found the plaintiff had alleged a First Amendment violation because he alleged the defendants' actions toward the process server were aimed at hindering the plaintiff's First Amendment right to access the courts and that the arrest, detention, and harassment in jail were sufficiently chilling. *Id*. at 517.

The district court in *Mills* did not broadly hold, as Plaintiffs suggest, that any law enforcement action toward a plaintiff's associates can be chilling. The jailed party's function as a process server for the plaintiff was a key factor in the court's rationale. Moreover, the facts alleged in this case do not come close to the pattern of acts with an "undercurrent of violence" the district court considered in *Mills*. *Id*. (*citing Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002)). In this case, Plaintiffs have not alleged Defendant Livingston threw things at any person, gave false statements about them, had them arrested, or mocked them in jail. Even if the *Mills* opinion was as broad as Plaintiffs wished, it does not represent "controlling authority [] or a robust consensus of persuasive authority" sufficient to defeat Livingston's invocation of qualified immunity. *Wyatt*, 718 F.3d at 503.

Plaintiffs cannot rely on Livington's alleged statements toward non-parties as evidence their speech has been chilled. At worst, Plaintiffs have alleged Livingston "chastised" Brown. They have provided no authority to support a claim these alleged non-concrete acts were not "too trivial or minor to be actionable as a violation of the First Amendment." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Livingston is entitled to qualified immunity, and Plaintiffs' First Amendment retaliation claim should be dismissed.

### 7. *Plaintiffs have alleged no facts to support an award of damages.*

Plaintiffs fail to point to any allegations to support a claim for compensatory damages except their generalized statement Brown felt "distressed" after he spoke with Livingston. YAL has not alleged or argued it has any basis at all to seek damages. Plaintiffs' claims should be dismissed to the extent they seek compensatory damages.

### CONCLUSION

Defendants respectfully request the Court to dismiss Plaintiffs' claims to the extent set forth in their primary brief and this rebuttal. Defendants request such other relief as the Court deems appropriate under the circumstances.

THIS, the 5th day of December, 2019.

Respectfully submitted,

**JONES COUNTY JUNIOR COLLEGE; BOARD OF TRUSTEES OF JONES COUNTY JUNIOR COLLEGE; JESSE SMITH; MARK EASLEY; GWEN MAGEE; AND STAN LIVINGSTON**

*/s/ Paul B. Watkins, Jr.*
J. CAL MAYO, JR. (MB NO. 8492)
PAUL B. WATKINS, JR. (MB NO. 102348)
ATTORNEYS FOR DEFENDANTS

OF COUNSEL:

MAYO MALLETTE PLLC
5 University Office Park
2094 Old Taylor Road
Post Office Box 1456
Oxford, Mississippi 38655
Tel: (662) 236-0055
Fax: (662) 236-0035
cmayo@mayomallette.com
pwatkins@mayomallette.com

11